Filed 8/1/13  In re Rebecca R. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Rebecca R., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. IGNACIO R., Defendant and Appellant. | F066061 (Super. Ct. No. 11CEJ300064-4) **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Brian M. Arax, Judge.

Laloni A. Montgomery, under appointment by the Court of Appeal, for Defendant and Appellant.

Kevin Briggs, County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Appellant Ignacio R. (father) challenges the disposition in this case. He contends (1) the juvenile court erred in failing to assure he received adequate notice of the proceedings; (2) he was denied his right to counsel; (3) the jurisdictional finding was not supported by substantial evidence; (4) substantial evidence did not support the denial of reunification services; (5) required findings on denial of reunification were not made by the juvenile court; and (6) the juvenile court failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA). We conclude all of the issues raised by father are either forfeited or without merit, with the exception of the ICWA issue, which we will remand to the juvenile court for a limited purpose.

**FACTUAL AND PROCEDURAL SUMMARY**

On April 23, 2012, the Fresno County Department of Social Services (the Department) filed a Welfare and Institutions Code section 300[1] petition on behalf of Rebecca R., then seven months old. Ignacio is the presumed father. The petition alleged that Rebecca's mother's (mother) substance abuse affected her ability to provide care, supervision, and protection of Rebecca, and drug paraphernalia was found in a location where Rebecca could access it. Father's whereabouts were listed as unknown, but he was shown on the birth certificate as Rebecca's father.

At the time Rebecca's petition was filed, a case already was pending on behalf of her sister, Isabella, and two half siblings (collectively siblings). These three children had been removed from the home in March 2011, and the juvenile court assumed jurisdiction over them on March 30, 2011.

Two declarations of due diligence regarding attempts to locate father were filed. The first declaration of due diligence lists the attempts to locate father in the siblings' case. The documentation attached to the declaration of due diligence refers to only the

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

three children who were the subject of the petition filed in March 2011. The second declaration of due diligence attempts to describe a search for Rebecca's father. An examination of the supporting documentation, however, revealed those documents were the same as those attached to the declaration of due diligence regarding Rebecca's siblings, and they do not refer to Rebecca or contain any information about her. On May 9, 2012, the juvenile court found, based on these declarations, that the Department had exercised due diligence in attempting to locate Rebecca's father.

On May 23, 2012, a first amended petition was filed on behalf of Rebecca, adding allegations as to father. The amended petition alleged father had a history of substance abuse that negatively affected his ability to provide care and supervision of Rebecca, the substance abuse contributed to an unstable lifestyle and ongoing arrests for criminal offenses, and father was in the home on the day Rebecca was placed in custody and had failed to protect Rebecca from mother's substance abuse.

On June 6, 2012, the juvenile court held a 12-month review hearing on the siblings' case and also a scheduled jurisdictional and dispositional hearing on Rebecca's case. Father was represented by counsel in the siblings' case, but counsel made clear she did not represent father in Rebecca's case.

At the July 25, 2012, interim review hearing in Rebecca's case, the juvenile court found all three allegations pursuant to section 300, subdivision (b) to be true.

On October 26, 2012, a combined jurisdictional and dispositional hearing was held on the section 387 supplemental petition in Rebecca's case. Father appeared in person with counsel. Counsel for father asked the juvenile court to vacate the jurisdictional findings that pertained to father because "he was not present." Counsel also asked the juvenile court to reject the recommendation that reunification services be denied and asked to be provided services and visitation.

The juvenile court denied the request to vacate the jurisdictional findings. The juvenile court later asked, "Are we okay on notice [counsel] as far as now that we have

3.

him physically present?" Counsel replied, "Yes." The juvenile court proceeded to make a finding that ICWA did not apply. Thereafter, the juvenile court referred to information found in the social study, with references to specific pages, and found that the provisions of section 361.5, subdivision (b)(10) and (13) were "adequately proven." The juvenile court denied reunification services pursuant to these provisions.

## DISCUSSION

Father raises several challenges to the disposition order in this case. He contends (1) the juvenile court erred in failing to assure he received adequate notice of the proceedings; (2) he was denied his right to counsel; (3) the jurisdictional finding was not supported by substantial evidence; (4) substantial evidence did not support the denial of reunification services; (5) required findings on denial of reunification were not made by the juvenile court; and (6) the juvenile court failed to comply with ICWA.

## I.    Notice and Due Process

Father contends the Department made insufficient efforts to locate him and provide him notice of the proceedings, thus depriving him of due process. The Department contends reasonable efforts were made and there was no due process violation. We conclude any defects in notice were waived and father has forfeited this issue.

"In juvenile dependency proceedings, due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend. [Citation.]" (*In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1114.) Section 316.2, subdivision (b) requires that a presumed father be provided notice at his last and usual place of abode by certified mail, return receipt requested. The notice must state that the child is subject to proceedings under section 300 and that the proceedings could result in the termination of parental rights and adoption of the child. (*Ibid.*) If the presumed father's whereabouts are unknown, the child welfare agency must act with diligence to locate him. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188

4.

(*Justice P.*).)  Reasonable diligence implies "a thorough, systematic investigation and an inquiry conducted in good faith.  [Citation.]"  (*Ibid.*)

### *Notice and Due Process Requirements*

"The child dependency statutory scheme requires parents be notified of all proceedings involving the child.  [Citation.]  When a social worker, police officer or probation officer takes a child into protective custody, that person must immediately inform the parent and provide a written statement which explains the parent's procedural rights and the preliminary stages of the dependency investigation and hearing.  [Citation.]

"The parent must also be notified of the detention hearing and given a copy of the dependency petition 'if the whereabouts of each parent … can be ascertained by due diligence .…'  [Citation.]  If it appears the parent cannot read, notice may be given orally.  [Citation.]  The parent must be informed of the conditions under which the child will be released, the hearings which may be required, the right to counsel, the privilege against self-incrimination and appeal rights.  [Citation.]  The parent must also be notified of each review hearing by mail or personal service.  [Citation.]"  (*In re Raymond R.* (1994) 26 Cal.4th 436, 440 (*Raymond R.*).)

"Parents are entitled to due process notice of juvenile court proceedings affecting the care and custody of their children .…  Due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'  [Citation.]  The means employed to give a party notice for due process purposes must be such as one, desirous of actually informing the party, might reasonably adopt to accomplish it.  [Citations.]

"If the whereabouts of a parent are unknown, the issue becomes whether due diligence was used to locate the parent.  [Citations.]  The term 'reasonable or due diligence' '"denotes a thorough, systematic investigation and inquiry conducted in good faith."'  [Citation.]  Due process notice requirements are deemed satisfied where a parent

5.

cannot be located despite a reasonable search effort and the failure to give actual notice will not render the proceedings invalid. [Citation.]" (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 247.)

Father here was identified as a presumed father in the petition at the outset of these proceedings, with a post office box as the address. As a presumed father, he was entitled to notice of the proceedings and an opportunity to appear. Once this occurs, both the constitutional requirements of due process and the statutory requirements are satisfied. (§§ 316.2, subd. (b), 290.2, subd. (a)(2), 291, subd. (e)(1); *In re Karla C.* (2003) 113 Cal.App.4th 166, 179; *In re Paul H.* (2003) 111 Cal.App.4th 753, 760.) To satisfy these due process rights, the juvenile court must ask the mother at the detention hearing or soon afterward about the identity of any alleged or presumed father. (§ 316.2, subd. (a); Cal. Rules of Court, rule 5.635(b); *Paul H.,* at p. 760.)

Section 291, the statute governing notice of the jurisdictional and dispositional hearings, requires that where, as here, the parent of a detained minor is not present at the detention hearing, the parent must be notified of the jurisdictional hearing by personal service or by certified mail, return receipt requested. (§ 291, subd. (e)(1).) Notice to an alleged father must be given "at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child." (§ 316.2, subd. (b).) When an alleged father's address is unknown and cannot be determined with due diligence, notice by publication is sufficient for due process. (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1352.) If supported by substantial evidence, a trial court's findings that notice by mail and by publication were proper will be upheld on appeal. (*Id.* at p. 1354.)

Here, although the Department filed declarations of due diligence setting forth all the efforts presumably taken to locate father, the declarations appear to be defective on their face. First, the attachments to the declarations state that there were efforts to locate the father of Isabella, who is Rebecca's sibling. The children identified by birth dates in

the letters that were sent were Isabella and her half siblings; Rebecca was not identified by name or birth date. Furthermore, there is no evidence that any of these mailings were sent by certified mail, return receipt requested, or that they included copies of the section 300 petition or any other pleadings, such as notices of hearings, filed in Rebecca's case. Lastly, there is no indication in the record that the Department took the next step of seeking to notify father by publication or that the juvenile court required notification by publication in order to satisfy due process.

As we discuss below, had father not waived the defect in notice, we would conclude that the Department did not satisfy due diligence and notice was defective.

*Waiver*

At the time law enforcement and social workers arrived to investigate a referral and place Rebecca into custody, father was observed looking out the window of the home. Father was not found in the home after law enforcement and social workers entered. A nearby back window, however, was open and it had no screen. The bedroom of the home had adult male clothing in the closet. At the time Rebecca was taken into custody, there was an active warrant for father's arrest. Evidently, father fled the scene when law enforcement and social workers arrived to investigate the referral and place Rebecca in custody.

Father was represented by counsel throughout proceedings related to Rebecca's three siblings, but this same counsel was not appointed formally to represent father in Rebecca's case until October 26, 2012, at the combined jurisdictional and dispositional hearings for Rebecca. Father first physically appeared in Rebecca's case at that time.

Father now contends that efforts to locate him after he fled were insufficient and the juvenile court's finding on May 9, 2012—the Department had made reasonable efforts to try and locate him—was not supported by the evidence. Our problem with father's contention is that he failed to raise this objection in the juvenile court. He asserts in his opening brief that he affirmatively failed to waive the defective notice at the

7.

October 26, 2012, hearing; therefore, the issue is preserved for appeal and is not forfeited. Father misconstrues the law on this point.

Parents are not permitted to raise for the first time on appeal issues that could have been raised in the juvenile court. Any other rule would allow a party to play fast and loose with the administration of justice by deliberately standing by without making an objection, of which he or she is aware, and thereby permitting the proceedings to conclude, which he or she may acquiesce in, if favorable, and which he or she may avoid, if not. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339; *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.)

Here, when the proceedings commenced on October 26, 2012, after the juvenile court had called the cases involving all four children, the juvenile court asked for appearances for the record. Counsel for father stated she was appearing "on behalf of the father," who was present in court; counsel did not limit her appearance in Rebecca's case. There is no indication this was other than a general appearance. Later during that same proceeding, counsel informed the juvenile court her appointment in Rebecca's case had not been formally ordered, which the juvenile court promptly did.

After being formally appointed to represent father in Rebecca's case, counsel did not object to the lack of notice or assert any defect in notice. Instead, counsel asked for two jurisdictional findings to be vacated as to father and found not true. This request was followed with an objection to the denial of reunification services in the recommended disposition. Father, through counsel, requested reunification services be provided.

A parent's general appearance will be considered a waiver of the parent's right to challenge adequacy of notice of the proceedings. (*In re B.G.* (1974) 11 Cal.3d 679, 688-692 (*B.G.*); *In re Gilberto M.* (1992) 6 Cal.App.4th 1194, 1198; *Raymond R., supra,* 26 Cal.App.4th at pp. 440-441; *In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Here, father, with his counsel, made a general appearance on October 26, 2012, not a special appearance, and did not challenge any defective notice. Nor does the record disclose any section 388

8.

petition based upon a due process challenge and lack of notice. (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 481, 487-488.)

"It is not always possible to litigate a dependency case with all parties present.… If a missing parent later surfaces, it does not automatically follow that the best interests of the child will be promoted by going back to square one and relitigating the case. Children need stability and permanence in their lives, not protracted legal proceedings that prolong uncertainty for them. Further, the very nature of determining a child's best interests calls for a case-by-case analysis, not a mechanical rule." (*Justice P., supra,* 123 Cal.App.4th at p. 191.)

In this case, father fled when social services arrived to investigate and take Rebecca into custody. Father was represented by counsel in related dependency proceedings, and counsel was aware of the related proceeding involving Rebecca and was present at the four hearings in Rebecca's case that preceded the October 26, 2012, hearing where father first formally appeared. At his first appearance in Rebecca's case, father made a general appearance and did not raise defective notice as an issue. Timely objection to statutory notice defects is required to permit the court to cure any error by ordering proper notice or allowing a continuance. (See *In re Riva M.* (1991) 235 Cal.App.3d 403, 411-412.) Under these circumstances, we conclude that father has forfeited any claim of defective notice and failure to comply with due process. (*Justice P., supra,* 123 Cal.App.4th at p. 191.)

Our finding of waiver is further buttressed by the two most important legislative goals underlying dependency proceedings -- prompt resolution of the child's custody status and provision of a stable environment in which to develop. (*In re Erika W.* (1994) 28 Cal.App.4th 470, 476.) To allow father to remain silent in the juvenile court and then later raise this issue does not further the legislative goals.

Even defects in notice to acquire jurisdiction of the person are waiveable. (*In re B.G.*, *supra,* 11 Cal.3d at p. 689.) Accordingly, when no objection was raised in the

9.

juvenile court at the October 26, 2012, hearing, the issue was forfeited and the juvenile court did not err in proceeding with the case.

## II. Right to Counsel

Father contends his right to counsel was abridged because counsel was not appointed to represent him at the inception of the case. He is incorrect.

In dependency proceedings, parents have a statutory right, and in some cases a due process right, to competent counsel. (§§ 317, 317.5, subd. (a); *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1153, fn. 6; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1659.) Section 317, subdivision (a)(1) provides in relevant part that when "it appears to the court that a parent or guardian of the child desires counsel … the court may appoint counsel …."

A prerequisite to appointment of counsel is some indication from the indigent parent that he or she desires counsel be appointed in the case. (*In re Ebony W.* (1996) 47 Cal.App.4th 1643, 1647-1648 (*Ebony W.*).) A juvenile court has no obligation to appoint counsel for a parent who is absent from the proceedings, and failure to appoint counsel for an absent parent does not infringe statutory or due process rights to counsel. (*Id.* at pp. 1645-1646.)

Here, father first appeared on October 26, 2012, in Rebecca's case and counsel formally was appointed for him on that date immediately after he indicated a desire for counsel. Although father argues the appointment should have been made earlier because his counsel in the related cases was present at earlier proceedings involving Rebecca and her siblings, there was no request made by counsel on father's behalf that she be appointed in Rebecca's case. Father's counsel affirmatively indicated the contrary to the juvenile court -- that it would be inappropriate to appoint her in Rebecca's case until such time as father appeared in the case.

Thus, father's right to counsel was not abridged. (*Ebony W., supra,* 47 Cal.App.4th at pp. 1645-1646.)

10.

**III.    Substantial Evidence**

Father contends the juvenile court's jurisdictional findings and the order denying reunification services were not supported by substantial evidence.  We disagree.

*Standard of Review*

On a challenge to the sufficiency of the evidence to support a finding, we apply the substantial evidence standard of review.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)  In doing so, we view the evidence in a light most favorable to the juvenile court's findings.  (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.)  If there is substantial evidence supporting the finding or judgment, our duty ends and the finding or judgment must not be disturbed.  (*In re Precious J.* (1996) 42 Cal.App.4th 1463, 1472.)  We also note that we review judicial action and not judicial reasoning.  (*People v. Lawley* (2002) 27 Cal.4th 102, 175 (conc. opn. of Brown, J.).)

"In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact.  All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.  Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact."  (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.)

*Jurisdictional Findings*

Section 300 and its subdivisions describe those minor children over whom the juvenile court may exercise its dependency jurisdiction.  The juvenile court's jurisdictional finding that a child falls within one of these statutory descriptions must be supported by a preponderance of the evidence.  (§ 355, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.)

11.

On review, we determine whether the juvenile court's jurisdictional finding was supported by substantial evidence. (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1344.) In so doing, we "must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.) Under this standard, the juvenile court, not this court, assesses the credibility of witnesses, resolves conflicts in the evidence, and determines where the weight of the evidence lies. (*Id.* at pp. 52-53.) "We affirm the rulings of the juvenile court if there is reasonable, credible evidence of solid value to support them. [Citations.]" (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1319.)

Because the juvenile court in this case assumed dependency jurisdiction over Rebecca under subdivision (b) of section 300 based upon several separate allegations, two of which pertained to father, the juvenile court's ruling must be affirmed if there was sufficient evidence to support a finding of jurisdiction under any of those allegations. (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875-876.)

The thrust of father's argument is that the allegations of the petition contained conclusions without facts. This contention fails. The first amended petition, which the juvenile court found true on July 25, 2012, contained a concise statement of facts.

The juvenile court found true two findings as to father pursuant to subdivision (b) of section 300. First, that his history of substance abuse negatively affected his ability to provide adequate care, supervision, and protection of his child, and that Rebecca was at substantial risk of serious physical harm or illness as result. In support of this allegation the Department alleged father abused methamphetamine, cocaine, and alcohol. Despite receiving substance abuse treatment from the Department, he still had an unstable lifestyle with ongoing arrests for drug-related charges. Second, father failed to protect Rebecca from mother's substance abuse because on April 20, 2012, law enforcement found drug paraphernalia, a glass pipe, inside mother's purse and mother stated to the

social worker she had used the day prior. Father was found to be in the home at the time law enforcement arrived.

The evidence supporting the jurisdictional findings is found in the Department's social study prepared for the June 6, 2012, hearing date. A social study and the hearsay statements contained there are admissible and constitute competent evidence upon which to base a finding. (*In re Malinda S.* (1990) 51 Cal.3d 368, 382.) The social study stated that on April 20, 2012, when the social worker and law enforcement arrived at mother's house to investigate a crisis referral, father was present in the home, in violation of a restraining order. Mother admitted having used methamphetamine the day before; the glass pipe in her purse was in Rebecca's reach as the purse was on the floor where Rebecca was crawling.

This same social study report stated that in the dependency involving Isabella, Rebecca's sibling, it had been recommended that father participate in intensive outpatient substance abuse treatment. He did not participate because he had been incarcerated and upon release failed to maintain contact with the Department. A warrant subsequently was issued in November 2011 for father's arrest on charges of possession of a controlled substance, driving under the influence of a controlled substance, and driving with a suspended license. In March 2012, father was arrested and charged with possession of a controlled substance, possession of burglary tools, and providing false information.

The social study set forth father's extensive criminal history for burglary, possession of a stolen vehicle, theft of personal property, and possession of burglary tools. It also noted that father previously was physically abusive to the children, addicted to an illegal substance, and had engaged in domestic violence against mother in front of Rebecca.

Father's chronic substance abuse problem, his failure or inability to participate in treatment because of his decision to engage in criminal activity and suffer the consequence of incarceration, his failure to maintain contact with the Department and

13.

address his issues in Isabella's case, and his failure to protect Rebecca and prevent her having access to drug paraphernalia all supported the jurisdictional findings.

The Legislature has recognized that, in general, substance abuse has a negative effect on the home environment and the safety of children living in that environment. (§ 300.2 ["The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."].)  When a parent's drug problem amounts to a lifestyle problem, the home environment usually is permeated with the negative effects of drug abuse.  A parent's drug-centered lifestyle can be found, in and of itself, to expose a child to substantial risks -- the risk that the child's physical and emotional well-being will be seriously compromised and the risk that the child will ingest drugs.  (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 825-826.)  Using drugs while responsible for a child's welfare and leaving drugs within a child's reach simply are not "parental acts."  (*In re Leticia S.* (2001) 92 Cal.App.4th 378, 382.)

In this case, there was ample evidence to support the juvenile court's jurisdictional finding that there was a substantial risk Rebecca would suffer serious physical harm or illness by virtue of father's substance abuse and its impact on his ability to supervise and care for Rebecca.  (*In re Brison C*. (2000) 81 Cal.App.4th 1373, 1378-1379.)

To the extent father is arguing that Rebecca did not actually suffer any serious harm and therefore was not at risk, we reject that contention.  The statutory scheme is designed to avert harm to a child.  A child need not have suffered harm to support an assumption of jurisdiction if the risk of harm is present.  (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136.)

Finally, father failed to dispute the jurisdictional finding specifically pertaining to mother under subdivision (b) of section 300, which the juvenile court found true. "Section 300 contemplates that jurisdiction may be based on any single subdivision." (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 330.)  The jurisdictional finding against mother

14.

was sufficient to bind father as well.  (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 (*Alysha S.*); see *In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1552-1554 (*Jeffrey P.*).) The minor is a dependent if the actions of *either* parent bring him or her within one of the statutory definitions.  (*Alysha,* at p. 397.)  "This accords with the purpose of a dependency proceeding, which is to protect the child, rather than prosecute the parent. [Citation.]"  (*Ibid.*)

Section 302, subdivision (a) empowers the juvenile court to assume jurisdiction over a child described in section 300 regardless of whether the child is in the physical custody of both parents or in the sole legal or physical custody of one parent at the time the event or condition occurred that brought the child within the jurisdiction of the court. "The department of social services 'is not required to prove two petitions, one against the mother and one against the father, in order for the court to properly sustain a petition [pursuant to § 300] or adjudicate a dependency.'  [Citation.]"  (*Jeffrey P., supra,* 218 Cal.App.3d at p. 1554.)  A finding of jurisdiction sustainable as to one parent is sustainable as to both.  (*Alysha S., supra,* 51 Cal.App.4th at p. 397.)

Thus, we conclude the assumption of jurisdiction was supported by substantial evidence.

### *Denial of Reunification Services*

Father also contends there was not substantial evidence supporting the juvenile court's order denying reunification services to him pursuant to section 361.5, subdivision (b)(10) and (13).  Again, his claim is without merit.

We initially note that father did not ask for a contested hearing on these recommended findings.  Instead, he affirmatively represented that he was "not asking for a trial but he's objecting to not being given the opportunity to reunify with Rebecca … and would like visitation."

Section 361.5, subdivision (b) constitutes recognition by the Legislature "that it may be fruitless to provide reunification services under certain circumstances.  [Citation.]

15.

Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources.  [Citation.]"  (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 (*Baby Boy H.*); *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744-745 [agreeing with *Baby Boy H.*'s understanding of the legislative purpose in enacting § 361.5, subd. (b)(10)].)  The exceptions to the rule requiring provision of reunification services listed in subdivision (b) "demonstrate a legislative determination that in certain situations, attempts to facilitate reunification do not serve and protect the child's interests."  (*Baby Boy H.,* at p. 474.)

Under section 361.5, subdivision (b)(10), reunification services need not be ordered where a child previously was removed from the custody of a parent, the parent failed to reunify with the child, and the parent failed to make reasonable efforts to correct the problems that led to the removal.  The statute was enacted in recognition that despite the basic policy of seeking to reunify dependent minors with their parents, in some circumstances "attempts to facilitate reunification do not serve and protect the child's interests," and would be an exercise in futility.  (*Baby Boy H.*, *supra,* 63 Cal.App.4th at p. 474; see *In re Jasmine C.* (1999) 70 Cal.App.4th 71, 78; cf. *Deborah S. v. Superior Court* (1996) 43 Cal.App.4th 741, 750-751.)

Section 361.5, subdivision (b)(13) provides:  "Reunification services need not be provided to a parent … when the court finds, by clear and convincing evidence, any of the following:  [¶] … [¶] … That the parent … of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible."

16.

With respect to the section 361.5, subdivision (b)(10) grounds for denial of reunification services, the evidence established that Isabella, Rebecca's sister, had been removed from father's care on March 28, 2011; reunification services were ordered for father in that case; father failed to participate in services or maintain contact with the Department; and services were terminated on December 7, 2011. These facts satisfy the requirements of section 361.5, subdivision (b)(10).

As for section 361.5, subdivision (b)(13), evidence supports a denial of reunification as well. The evidence established that father admitted using methamphetamine for the past 10 years; he had a history of abusing illegal substances and alcohol since he was 22 years of age; and he had never maintained sobriety for any length of time. Between June 15 and December 7, 2011, father was offered substance abuse treatment services, but failed to participate.

Father's admitted drug use satisfies the first prong of section 361.5, subdivision (b)(13) in that it establishes current and chronic drug use. The second prong, resistance to treatment within a three-year period immediately prior to the filing of the petition on behalf of Rebecca, is satisfied by the failure to participate in services, including substance abuse services, which were offered during June 15 to December 7, 2011. Resistance to treatment can be manifested by failing to attend treatment programs, dropping out of treatment programs, or resuming drug use after participating in a program. (*Laura B. v. Superior Court* (1998) 68 Cal.App.4th 776, 779-780; *In re Brooke C.* (2005) 127 Cal.App.4th 377, 382.)

We conclude the denial of reunification services was supported by substantial evidence.

## IV. Required Findings

Father contends the juvenile court "failed to make required findings to support its orders denying reunification services." (Boldface and capitalization omitted.) Again, the record establishes that father has forfeited any claim of error.

17.

We first note father has failed to identity any finding, let alone any statutorily required finding, the juvenile court failed to make with respect to section 361.5, subdivision (b)(10) and (13) that he contends should have been made. The juvenile court articulated the basis for its finding that reunification services should be denied pursuant to section 361.5, subdivision (b)(10) and (13), including reference to specific pages of the social study.

The general rule is that an objection must be raised in the juvenile court to preserve an issue for appeal. (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 558 ["nonjurisdictional issues must be the subject of objection or appropriate motions in the juvenile court"].) Findings of fact generally are required in dependency proceedings only if they are requested by a party to the proceeding. (*In re Marcel N.* (1991) 235 Cal.App.3d 1007, 1013-1014.) A parent may not assert on appeal a failure to comply with a statutory requirement if the alleged failure was not asserted in the juvenile court. (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 502.) The failure to request findings constitutes a waiver of factual findings and legal conclusions. (*In re Randi D.* (1989) 209 Cal.App.3d 624, 631.)

Moreover, necessary findings can be implied if supported by substantial evidence. (*In re Steve W.* (1990) 217 Cal.App.3d 10, 27.) As discussed in part III., *ante,* substantial evidence supported the section 361.5, subdivision (b)(10) and (13) findings.

## V.     ICWA

When father first appeared in this case on October 26, 2012, it was a combined jurisdictional and dispositional hearing for Rebecca on a section 387 petition. Nowhere in the transcript of that hearing was father ever asked if he had any Indian ancestry. The juvenile court proceeded to conduct a combined jurisdictional and dispositional hearing for Rebecca on October 26.

Father maintains that failure to make affirmative inquiry of him regarding possible Indian ancestry violates state-mandated requirements. Father relies on section 224.3,

18.

subdivision (a), which establishes an affirmative and continuing duty of the juvenile court and the county welfare department to inquire in all dependency proceedings whether a child for whom a section 300 petition has been filed is or may be an Indian child. California Rules of Court, rule 5.481(a)(1) also requires the Department to include with any section 300 petition an "Indian Child Inquiry Attachment (form ICWA-010(A))" affirmatively disclosing whether an Indian child inquiry was made, and, if so, what information was learned. This was done as to mother. The form attached to the section 300 petition states mother was interviewed and she reported Rebecca had no known Indian ancestry.

California Rules of Court, rule 5.481(a)(2) similarly requires a juvenile court at the first appearance of a parent in any dependency case to order the parent to complete a "Parental Notification of Indian Status (form ICWA-020)." Completion of this form enables a parent to claim or deny affirmatively Indian heritage. There is no indication in the record this was done in Rebecca's case with father. Later, however, in the October 26, 2012, proceeding, the juvenile court did make a specific finding that Rebecca was not an Indian child and ICWA did not apply. Father, who was at this time represented by counsel and was present in court, did not object.

Although acknowledging the juvenile court failed to comply with the California Rules of Court and inquire of father about Indian ancestry, the Department maintains that father's failure to assert affirmatively in this appeal that he has Indian ancestry and his failure to object in the juvenile court to the finding that ICWA did not apply constitute a forfeiture of this issue.

As a preliminary matter, we reject the Department's contention that father's failure to raise this point in juvenile court precludes its consideration on appeal. "The generally accepted rule in dependency cases is that the forfeiture doctrine does not bar consideration of ICWA notice issues on appeal. [Citation.]" (*In re Alice M.* (2008) 161 Cal.App.4th 1189, 1195.) "A parent in a dependency proceeding is permitted to raise

19.

ICWA notice issues not only in the juvenile court, but also on appeal even where, as here, no mention was made of the issue in the juvenile court." (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435.)

Accordingly, we conclude that because father's ICWA challenge was raised in a timely appeal from the dispositional order, and the juvenile court has a sua sponte duty to assure compliance with the notice requirements of the ICWA, father's ICWA challenge is cognizable. (*In re H.A.* (2002) 103 Cal.App.4th 1206, 1213.) The record reflects the juvenile court failed to fulfill its sua sponte obligation.

On motion by father, this court ordered on January 3, 2013, that the clerk's record in Isabella's case, up to and including October 26, 2012, augment the record on appeal in Rebecca's case. There was no compliance with this order. The deputy clerk's affidavit filed with this court January 18, 2013, erroneously states that all documents in Isabella's dependency case were included with the record on appeal in Rebecca's case. A cursory review of the record on appeal, however, disclosed that not even the original petition in Isabella's case was included, let alone any subsequent orders that may reveal an ICWA finding. The only documents in the record on appeal were those filed on or after the original petition in Rebecca's case. Since the petition on behalf of Isabella was filed over a year prior to Rebecca's petition, clearly, documents covered by this court's order exist but were not provided. For some reason, appellate counsel did not follow through to assure compliance with the augmentation. Hence, there is nothing in the record to indicate whether or not ICWA was found to apply in Isabella's case, a finding that would be determinative in Rebecca's case since the two children have the same mother and father. Consequently, the order will be reversed and remanded for the limited purpose of complying with the ICWA requirements.

## DISPOSITION

The order is reversed and the matter is remanded for the limited purposes of (1) conducting an ICWA inquiry of father, and (2) providing proper ICWA notice if the

20.

juvenile court has reason to believe Rebecca is or may be an Indian child. If the juvenile court determines there is no reason to believe that ICWA applies after conducting the ICWA inquiry of father, the juvenile court shall reinstate its order. Should the juvenile court determine that there is sufficient reason to trigger the notice requirements under ICWA and the California Rules of Court, it shall direct the Department to provide proper ICWA notice to the BIA and all identified tribes. The Department shall document its efforts to provide such notice by filing such documentation and any and all responses received with the juvenile court. If within 60 days of sending proper notice under ICWA to the BIA and any identified tribes an identified tribe responds by confirming that Rebecca is or may be eligible for membership, the juvenile court shall proceed pursuant to the terms of IWCA. If no tribe so responds, the juvenile court shall reinstate its order.

_____

CORNELL, Acting P.J.

WE CONCUR:


_____

DETJEN, J.


_____

FRANSON, J.

21.